STATE OF NEBRASKA, EX REL. C. J. ELLIOTT, V. C. T. HOLLIDAY.

[FILED OCTOBER 5, 1892.]

1. **Judicial Sales**: DUTIES OF OFFICERS CONDUCTING: COURT TO SUPERVISE. In selling real estate under mortgage foreclosure the court may appoint a master commissioner or the sheriff to conduct the sale. It is the duty of the officer thus appointed to conduct all the proceedings leading up to and the sale itself in a fair, impartial manner so that the property may be sold for the best price possible. This officer is under the control of the court, and it is its duty to see that the advertisement of sale is published in a paper that will give it general publicity so as to invite competition, and that the sale in other respects is fairly conducted.

2. ———: SUPREME COURT MAY REVIEW BUT NOT DIRECT PROCEEDINGS BY MANDAMUS. If the trial court errs in any of its proceedings, its action may be reviewed in the supreme court; but this court will not by *mandamus* direct the officer making the sale to advertise the same in any particular newspaper.

ORIGINAL application for *mandamus*.

*C. J. Elliott*, and *Sullivan & Gutterson*, for relator.

An executive officer may be required to perform ministerial or executive duty, though party interested may have a remedy at law against him for failure to do so. (*Fremont v. Crippen*, 10 Cal., 211; *People v. McClay*, 2 Neb., 7; *Williams v. Smith*, 6 Cal., 91; *People v. Fleming*, 4 Denio [N. Y.], 137.)

*Hutchinson & Dickinson*, and *Campbell & Dean*, contra:

Until it is made to appear that application was first made to court entering decree, or that the latter court is powerless to enforce its decree, *mandamus* will not issue from this court. (*State v. Fillmore Co.*, 32 Neb., 870; *State v. Moores*, 29 Id., 122; *Pickell v. Owen*, 24 N. W. Rep. [Ia.], 8.)

MAXWELL, CH. J.

This is an action for a peremptory writ of *mandamus* to compel the defendant, who is sheriff of Custer county, to advertise sales of real estate under foreclosure of mortgages in certain newspapers.

It is alleged in the petition "That the relator, who is an attorney at law in regular practice in the courts of Nebraska, did, on the 24th day of October, 1891, the same being one of the regular days of the October, 1891, term of the district court of Custer county, Nebraska, as attorney for the plaintiff therein, obtain a decree of foreclosure in said district court in a certain cause there and then pending in said court, wherein the American Freehold Land Mortgage Company, of London, was plaintiff, and George W. Losey was defendant, wherein said court found that there was due to the plaintiff the sum of $753.14, with interest at the rate of eight per cent per annum from the 20th day of October, 1891, which constituted a first lien on the mortgaged premises described in the petition in said cause, viz., the southeast quarter of section 23, township 17 north, range 20 west, 6th P. M.; and that unless said defendant pay said amount so found due within twenty days after the rendition of said decree, that said mortgaged premises be sold as upon execution to satisfy said decree.

"That more than twenty days, viz., about eighty days, elapsed after the rendition of said decree, and the said defendant had not paid the amount so found due, nor any part thereof, nor had there been filed in said cause any request for stay of sale. Whereupon relator filed with the district clerk of said Custer county, Nebraska, a *præcipe* for order of sale in said cause, which was duly issued under the seal of said court, a copy of which said order of sale is hereto attached, marked 'Exhibit A,' and prayed to be taken as a part hereof; that upon the receipt of said order of sale he at once prepared the notice of sale required by

the statute and caused the same to be inserted for publica-
tion in the *Custer Leader*, a newspaper of general circula-
tion in said Custer county, Nebraska, which said news-
paper is printed and published at Broken Bow, in said
county, and within about three miles of the land described
in said order of sale and notice, and which said newspaper
has a circulation equal to, if not larger, than any other
newspaper published in said county; that as soon as relator
was able to find the defendant herein, viz., on the first day
of March, 1892, who was and still is the sheriff of said
Custer county, he tendered to said defendant said order of
sale, together with the certificate of liens and incumbrances
as shown by the records of the district clerk's office, and a
copy of the notice of sale hereinbefore referred to, upon
which was the certificate of the publisher of said *Custer
Leader*, that said notice had been duly inserted in said
paper on the 18th day of February, 1892, to be pub-
lished for five consecutive weeks, and that the fees for the
publication had been fully paid by the plaintiff, a copy of
which said certificate is hereto attached, also copy of notice,
and marked 'Exhibit B,' and prayed to be taken as a
part hereof.   At the same time relator tendered to said
defendant, in current money of the United States, the sum
of $7.75 as advance sheriff's fees as follows, viz.:

| | | |
|---|---|---|
| For making levy | $0 | 50 |
| Calling appraisers | | 50 |
| Swearing appraisers | | 50 |
| Fees of appraisers | 1 | 00 |
| Copy of appraisement | | 25 |
| Advertising sale | | 50 |
| Mileage, five miles | | 50 |
| County treasurer's certificate of tax liens | 2 | 00 |
| County clerk's certificate of liens and incumbrance, | 2 | 00 |

and demanded said defendant to proceed to appraise and
sell said property in accordance with said order of sale and
notice.   And relator avers that said defendant then and

there absolutely refused to accept said order of sale, or to proceed to appraise the property described therein, or to sell, or to take any action whatever in the matter, unless relator would then and there pay him, in addition to the amount already tendered, the further sum of $5 as a publication fee, for a new notice of sale to be by him inserted in some other newspaper to be selected by him; that afterwards, on the 2d day of March, 1892, he renewed the tender above referred to, and tendered to said defendant in addition thereto the further sum of $3 for a new notice to be published in the *Custer Leader* selected by relator, or in some other paper that would publish the same for $3, if the said defendant was of the opinion that he could not legally proceed to sell under the notice already inserted by the relator, and the said defendant absolutely refused to accept said tender and publish the notice of sale in said *Custer Leader*, as requested by said relator, or in any other paper for the sum of $3; that while the said sheriff of Custer county had regularly taxed as costs on orders of sale the sum of $5 publication fee, yet the majority of publishers of newspapers in said Custer county only charge and are willing to contract for the publication of said sale notices, in the manner and for the time required by law, for the sum of $3 each, which is the amount charged by the *Custer Leader* for the notice so inserted by relator, as hereinabove set forth; that all of the newspapers published in said Custer county, except those published in the interests of a certain political party, known as the independent or people's party, have in the past and are now willing to publish the notice herein described, and all others of the same kind, for the sum of $3; that said defendant was elected by and belongs to the said independent or people's party; that the newspapers published in the interests of said party demand the sum of $5 for publishing said notice, and refuse to publish the same for a less sum, and said defendant insists on having all notices

of the above description published in said papers so demanding therefor the sum of $5 aforesaid, thereby compelling the plaintiff's clients to pay the sum of $2 in each case as tribute to his said party; that the majority of the said newspapers of said independent party, in which said defendant proposes to publish said sale notices, are papers published in rural towns, remote from the county seat of Custer county, and of such small circulation as in effect to utterly defeat the object of the law requiring the greatest possible publicity to be given of the time and place of such sales."

To this the defendant has filed a general demurrer.

No copy of the notice is set out in the petition, but it is alleged that the relator published the same without consulting the sheriff, and in fact without his knowledge, so far as appears, and this court is asked to approve of such practice by compelling the officer to accept the notice as his own. It is true that it is alleged that the officer will insert the notice in some newspaper other than the one selected by the attorney, and for advertising which a higher price will be paid than in the paper selected by the relator. For the purpose of the demurrer this is conceded to be true, and also that the officer may advertise in an obscure paper; still the remedy for these wrongs is not by *mandamus* from this court.

Section 852 of the Code provides that "All sales of mortgaged premises under a decree in chancery shall be made by a sheriff, or some other person authorized by the court, in the county where the premises or some part of them are situated; and in all cases where the sheriff shall make such sale he shall act in his official capacity, and he shall be liable on his official bond for all his acts therein, and shall receive the same compensation as is provided by law for like services upon sales under execution."

Section 451 provides: "Real property may be conveyed by master commissioners as hereinafter provided: First—

When, by an order or judgment in an action or proceeding, a party is ordered to convey such property to another, and he shall neglect or refuse to comply with such order or judgment. Second—When specific real property is required to be sold under an order or judgment of the court."

Section 452 provides: "A sheriff may act as a master commissioner under the second subdivision of the preceding section. Sales made under the same shall conform in all respects to the law regulating sales of land upon execution."

Section 453 provides: "The deed of a master commissioner shall contain the like recital, and shall be executed, acknowledged, and recorded as the deed of a sheriff of real property sold under execution."

It will thus be seen that, while a sheriff may sell real estate under a mortgage foreclosure, and as he has given bond for his official acts and is presumed to be familiar with the duties, he is usually appointed for that purpose or permitted to conduct the sale. The court, however, may appoint another to perform that duty.

The court is presumed to act impartially and for the best interests of both the creditor and debtor. The creditor is entitled to have his mortgage satisfied, the debtor also has rights in the premises, and is entitled to a fair appraisement of his property, and the property must, under the Code, sell for at least two-thirds of the net cash value so ascertained. The officer making the sale, whether he be sheriff or a master commissioner appointed by the court, is so far under its orders as to be answerable to it for any abuse of his powers or violation of his duty, and, no doubt, the court, upon the proper application, and being convinced that there was danger of an abuse of power on his part, may remove him and appoint another in his place. Neither the court itself, nor any of its officers, has any right to show partiality or unfairness in the performance of his functions, and it is the duty of the court to see that its officers do not give cause for suspicion of wrong. The

State, ex rel. Elliott, v. Holliday.

object of advertising property for sale is in order that publicity may be given to the sale and competition invited. Legal advertisements should not be inserted in an obscure paper where the probabilities are that they will be seen by but few, where there is a paper of general circulation in the county, because the object of the law will be in part at least defeated. To preserve impartiality and fairness the officer should not be under the direction or control of either party. Under the statute the plaintiff may become the purchaser of the estate; and while it is true that the sum bid must equal two-thirds of the net appraisement, still, if he could control the officer, there is danger that the appraisement would be fixed at much less than the true value. It is a power liable to abuse and should be jealously guarded by the courts.

The plaintiff, or his attorney, may, in a proper case, order an execution or order of sale to be issued and delivered to the officer, but neither can control the performance of his duty. These matters are almost wholly under the control of the trial court in the first instance at least. If an error is committed by that court or an abuse of discretion to the prejudice of one of the parties, the action complained of may be reviewed in this court in some of the modes provided by law. The trial court has jurisdiction of the subject-matter and the parties. Both are directly under its control and supervision, and this supervision should not be interrupted by proceedings by *mandamus* in this court If the court should exercise jurisdiction in such case it would lead to endless confusion. So far as appears, no application has been made to the district court, and it has had no opportunity to act in the premises.

The petition fails to state a cause of action. The demurrer is therefore sustained, and as it is apparent that the relator is not entitled to a *mandamus*, the action is

DISMISSED.

THE other judges concur.